NOT FOR PUBLICATION                                    (Doc. No. 12)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

———————————————————
                                          :
PHYLLIS LEVY,                             :
                                          :
                    Plaintiff,            :        Civil No. 10-4229 (RBK/KMW)
                                          :
            v.                            :        **OPINION**
                                          :
GLOBAL CREDIT AND COLLECTION              :
CORPORATION,                              :
                                          :
                    Defendant.            :
———————————————————       :

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Phyllis Levy ("Plaintiff") for an

award of attorneys fees and costs in the amount of $9,211.50.  Global Credit and Collection

Corporation ("Defendant") does not dispute that, pursuant to 15 U.S.C. § 1692k(a)(3), Plaintiff is

entitled to reasonable attorneys' fees and costs; rather, Defendant contests the amount of the

award Plaintiff seeks.  For the reasons expressed below, the Court will grant Plaintiff's motion in

part, but will reduce the fees requested by Plaintiff, awarding fees and costs in the amount of

$5,795.00.

**I.       BACKGROUND**

Plaintiff filed suit against Defendant on August 18, 2010, alleging claims under the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., a federal statute that

provides a cause of action to consumers who have been subjected to "the use of abusive,

deceptive, and unfair debt collection practices . . . ."  15 U.S.C. § 1692(a).  In the action

underlying this motion, Plaintiff alleged that, from February 19, 2010 to March 24, 2010,

1

Defendant called Plaintiff's home thirty (30) times in an attempt to collect the debt of "Jeffrey Levy," despite having been told by Plaintiff several times that no such individual resided at her address.  Pl. Compl. at ¶¶ 23, 27.  Represented by attorneys from Kimmel & Silverman, P.C., Plaintiff filed a Complaint in this Court and, on May 11, 2011, Plaintiff agreed to a judgment against Defendant, pursuant to Federal Rule of Civil Procedure 68, "in the sum of $1,001.00, plus court costs together with reasonable attorney fees as agreed to by the parties, or if no agreement be reached, as determined by the Court on motion."[1]  Pl. Notice of Acceptance of Offer of Judgment, May 11, 2011 (Doc. No. 11); Def. Offer of Judgment, May 6, 2011 (Doc. No. 11-1).

On May 25, 2011, Plaintiff moved for an award of attorneys' fees and costs in the amount of $9,211.50.  Pl. Br. Fee Award.  Plaintiff claims that attorneys and paralegals at Kimmel & Silverman expended a total of 29.8 hours on this matter, at rates of $425.00 per hour (partner Craig Thor Kimmel), $300.00 per hour (attorneys Amy Bennecoff, Tara Patterson, and Sarah Young), $165.00 per hour (paralegals Christy Sunchych and Chloe O'Connell), and $155.00 per hour (paralegal Jason Ryan).  Finally, Plaintiff states that court filing fees in the amount of $350.00 are included in the award claimed.  Pl. Br. Fee Award 2-3.

Defendant argues that the attorney and paralegal hourly rates claimed by Plaintiff are not reasonable, that Plaintiff cannot recover fees for work performed after Plaintiff accepted Defendant's judgment offer, and that Plaintiff seeks compensation for "excessive, duplicative, and non-compensable billing entries."  Def. Br. Fee Award 2.  Defendant requests that Plaintiff be awarded no more than $3,951.00, inclusive of attorneys' fees and court costs.  Id. at 11.

---

[1] Section 1692k of the FDCPA provides for a plaintiffs to recover for "any actual damage sustained" by a defendant's failure to comply with a provision of the statute, and, where the plaintiff is an individual (as here), "additional damages as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(a)(1)-(2).  The costs of the action and reasonable attorneys' fees are added to those damages.  15 U.S.C. § 1692k(a)(3).

## II.     DISCUSSION

The Court begins its discussion of this matter by noting that Kimmel & Silverman, the law firm representing Plaintiff, specializes in consumer law, and draws much of its practice from litigation under the FDCPA.  Indeed, the firm characterizes itself as "the most experienced, most successful consumer warranty law firm in the nation."  Doc. No. 12-7; see also http://www.creditlaw.com/debt-collection-lawyers.htm (law firm website).  We acknowledge the firm's expertise in this area.  Furthermore, we agree with Kimmel & Silverman that the FDCPA "was enacted to eliminate abusive debt collection practices," and that "the fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefiting society in general . . . ."  Pl. Br. Fee Award 5-6.

However, the question raised by Plaintiff's petition for attorneys' fees is not whether Kimmel & Silverman's representation helps to vindicate those rights protected by the FDCPA.  Rather, the relevant question is whether the firm's requested fees are reasonable in light of the services rendered.  Although the analysis that follows illuminates the legal basis for the Court's decision here, the Court notes at the outset that this is by no means the first time that Kimmel & Silverman's fees have been reduced by a court.  Indeed, consideration of the instant motion has brought this Court's attention to other FDCPA cases wherein plaintiffs are represented by Kimmel & Silverman.  See, e.g., Mills v. Lieberman, Michaels & Kelly, LLC, 2011 U.S. Dist. LEXIS 121416 (M.D. Pa. Oct. 20, 2011); Weed-Schertzer v. Nudelman, Klemm & Golub, 2011 U.S. Dist. LEXIS 108928 (D.N.J. Sept. 23, 2011) (WJM); Lorandeau v. Capital Collection Serv., 2011 U.S. Dist. LEXIS 101994 (E.D. Pa. Sept. 8, 2011); Brass v. NCO Fin. Sys., 2011 U.S. Dist. LEXIS 98223 (E.D. Pa. July 22, 2011); Matray v. DBF Collection Corp., 2011 U.S. Dist. LEXIS 58857 (D.N.J. May 31, 2011) (FLW).  The majority of these opinions, and many others not cited

herein, concern motions for the award of Kimmel & Silverman's attorneys' fees, and they order

a reduction in those fees.  Accordingly, the Court finds itself puzzling over Kimmel &

Silverman's insistence on claiming the same fee rates in each of its FDCPA cases.  Should

another such petition reach this Court in the future, we hope not to have to puzzle over it again.

**A. The FDCPA Requires an Award of Reasonable Costs and Attorneys' Fees in This Case**

"[I]n the case of any successful action to enforce . . . liability" under the FDCPA, the

statute provides for the award of "the costs of the action, together with a reasonable attorney's

fee as determined by the court." 15 U.S.C. § 1692k(a)(1), § 1692k(3).  Notably, "attorney's fees

should not be construed as a special or discretionary remedy . . . ."  Graziano v. Harrison, 950

F.2d 107, 113 (3d Cir. 1991).

The burden of proving that a request for attorneys' fees is reasonable rests on the party

seeking the fees.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  To satisfy this

burden, the petitioner must "submit evidence supporting the hours worked and rates claimed."

Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The district court is afforded a

"great deal of discretion" to adjust the awarded fee in light of the opponent's objections.  Id.  The

starting point of a district court's analysis is the lodestar amount, which is "the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id. (quoting

Hensley, 461 U.S. at 433). "The Court may not make a finding of reasonableness based on a

generalized sense of appropriateness, but must rely on the record."  Acosta v. Nat'l Packaging,

Inc., No. 09-701, 2010 U.S. Dist. LEXIS 75847, 2010 WL 3001191, at *8 (D.N.J. July 28, 2010)

(citing Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001)).  In fact, "it is

necessary that the Court go line, by line, by line through the billing records supporting the fee

request" in order to satisfy the required reasonableness inquiry.  Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001) (internal citations omitted).

**B. The Hourly Attorney and Paralegal Rates Proposed by Plaintiff Are Not Reasonable**

Accordingly, as the lodestar method of determining attorneys' fees requires, we examine the reasonableness of the hourly rate claimed by Plaintiff, and the reasonableness of the number of hours expended on the case.  Plaintiff claims rates of $425.00 and $300.00 per hour for the attorneys working on this matter, and $165.00 and $155.00 per hour for the paralegals assisting with the case.  In order to evaluate the reasonableness of an attorney's rates, the Court employs the test outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974).  See also Public Interest Research Group v. Windall, 51 F.3d 1179, 1185 n.8 (3d Cir. 1995).[2]  The Court finds five of these factors to be particularly relevant in this case—namely, the customary fee charged in similar cases; the experience, reputation, and ability of the attorneys; awards in similar cases; the time and labor required; and the novelty and difficulty of the questions.

1. Customary fee

Plaintiff submits three sources to fulfill its burden of demonstrating that the rates it requests are reasonable: the Consumer Law Attorney Fee Survey (2007), the Laffey Matrix of the Civil Division of the United States Attorney's Office, and an affidavit by consumer protection attorney Nicholas Bontrager.  Doc. Nos. 12-8, 18-1, 12-6.  Defendant submits the fee schedule published by Community Legal Services ("CLS") in support of the fees it proposes.

---

[2] The twelve factors to be considered are as follows: (1) the time and labor required by the matter; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

For the reasons explained below, the Court elects to use Defendant's proposed schedule in calculating the reasonable attorneys' fees due to Plaintiff.

First, the Court declines to adopt the Consumer Law Attorney Fee Survey submitted by Plaintiff, as have other courts in the Third Circuit. This Court finds it noteworthy that, despite Kimmel & Silverman's mechanical submission of the Survey to each court that hears its section 1692k(3) petitions, the Survey has not been adopted within the Third Circuit. See Williams v. NCO Fin. Sys., 2011 U.S. Dist. LEXIS 50635 (E.D. Pa. May 10, 2011) ("The Court is not aware of any court within this Circuit that has relied upon the Consumer Law Attorney Fee Survey."). The Court is surprised by Kimmel & Silverman's persistence in shopping the Survey around to various courts in this region, despite its track record in the Circuit. More important than the Survey's unpopularity, however, is the reason underlying that disfavor: the Consumer Law Attorney Fee Survey does not narrowly describe the legal market within which this matter arises. The Survey not only covers the relevant market (New Jersey and Pennsylvania), but it also includes Washington, D.C. and several surrounding southern states as well, where the legal market is likely to be different than in this vicinage.

Moreover, Plaintiff relies upon the Laffey Matrix, which is typically employed by the United States Attorney for the District of Columbia, to support its conclusion that Kimmel & Silverman's requested fees are reasonable. Pl. Reply Fee Award, Ex. A. The Third Circuit has explicitly articulated reservations regarding the accuracy and reliability of the Laffey index. See Interfaith Community Org. v. Honeywell Inter. Inc., 426 F.3d at 710 n.14 ("[A]ny index that is updated based on a statistical measure of inflation—rather than regular recalibration in light of prevailing rates—will tend to diminish in accuracy over time. For this reason, district courts in this Circuit should be assiduous in evaluating fee requests in light of all the evidence."). The

Court therefore also declines to employ the Laffey Matrix to calculate the reasonable fees owed to Plaintiff.

As it did in Weed-Schertzer v. Nudelman, 2011 U.S. Dist. LEXIS 108928 (D.N.J. Sept. 23, 2011) (WJM), the Plaintiff in this case has submitted an affidavit by consumer protection attorney Nicholas Bontrager,[3] and, like the court in Weed-Schertzer, this Court declines to adopt Mr. Bontrager's recommendation.  As the Weed-Schertzer Court found, "the affidavit submitted by Mr. Borntrager [sic] does not establish that Plaintiffs' proffered rates are appropriate in New Jersey.  Mr. Borntrager is not admitted in New Jersey, nor does he profess to represent clients in New Jersey.  He is a fairly recent (2007) law school graduate with no connection to this forum."  Weed-Schertzer, 2011 U.S. Dist. LEXIS 108928 at *16 (D.N.J. Sept. 23, 2011).

On the other hand, the source for the hourly rates proposed by Defendant—the CLS fee schedule—has been "approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia."  Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (internal citations omitted).  Moreover, the rates quoted in the CLS index are comparable to the fee schedules used to calculate attorneys' fees in other FDCPA cases in this district.  See, e.g., Weed-Scherzer, 2011 U.S. Dist. LEXIS 108928 at *18-19; Overly v. Global Credit & Collection Corp., 2011 U.S Dist. LEXIS 72460 (M.D. Pa. July 6, 2011) at *12-15.  The Court will therefore employ the CLS fee schedule to calculate the fee award in this case.[4]

---

[3] The Court notes that the Bontrager affidavit filed in Weed-Schertzer and the affidavit filed in this matter are completely identical, except that the affidavit in this case is dated May 25, 2011, and the affidavit filed in Weed-Schertzer is dated June 8, 2011.  Compare Pl. Br. Fee Award, Ex. D with Weed-Schertzer, 10-cv-6402, Doc. 14-6.

[4] The Court notes that Third Circuit precedent indicating that a district court must hold an evidentiary hearing before reducing a Plaintiff's claimed hourly rate.  See Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997) ("If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates.").  However, the Third Circuit has also pointed to its own conflicting precedent, where it has held that "failure to conduct an evidentiary hearing . . . is not reversible error," and that "[a] hearing must be held only where the court cannot fairly decide disputed questions of fact without it."  Blum v. Witco Chem. Corp., 829 F.2d 367, 377 (3d Cir.

2. Experience, Reputation, and Ability of the Attorneys

The Court acknowledges that Plaintiff's attorneys have devoted their practice to consumer protection litigation, and therefore possess a great deal of knowledge concerning such litigation.  Moreover, the Court further acknowledges that the numerous motions for Kimmel & Silverman's fees that are uncovered on a search of FDCPA case law in this region signals the fact that the firm meets with regular success in the prosecution of such claims.  This has also meant, however, that the law firm has grown accustomed to seeing its attorneys' fees reduced in nearly all such cases.  This has been noted in a Report and Recommendation by Magistrate Judge Mark Falk, adopted by District Judge William J. Martini, who also points out the "repetitive nature of Plaintiffs' fee petition."  Weed-Schertzer, 2011 U.S. Dist. LEXIS 108928 at *9 (D.N.J. Sept. 23, 2011).  The Weed-Schertzer Court highlights five cases wherein Kimmel & Silverman "rel[ies] on the same submissions," and indicates that those cases "resulted in reduced hourly rates and hours billed for Plaintiffs' counsel."  Id. at *8.  Likewise, in the instant case, Plaintiff's memorandum in support of its motion is almost identical to the petition submitted in Weed-Schertzer.  Compare Doc. No. 12-2 (Pl. Br. Fee Award) with Weed-Schertzer, 10-cv-6402, Doc. No. 14-1.

There is no doubt that, as Plaintiff argues, the merits of an FDCPA case are fact-specific, and an attorney experienced in FDCPA litigation will be better positioned to assess how the law applies to an individual client's case in light of its particular facts.  Pl. Br. Fee Award at 14. However, it is difficult to conceive of a field of law to which such statements would not apply, and Plaintiff does not offer any reasons as to how Kimmel & Silverman's experience proved

---

1987).  This Court defers to the Circuit Court's resolution of the conflict: "It is well established that in a conflict between decisions of different panels, the oldest one controls."  Drelles v. Metropolitan Life Insurance Co., et al., 90 Fed. Appx. 587, 591 (3d Cir. 2004).  The Drelles Court goes on to point out that, because Blum predates Smith, "the District Court's failure to hold a hearing is not automatically reversible error . . . ."  Id.

particularly advantageous in this case.  The CLS fee schedule factors in the number of years that

an attorney has practiced law, and this Court has been presented with no reason as to why this

case requires any further accounting for Plaintiff's attorneys' experience.

  3. <u>Awards in Similar Cases</u>

  As stated above, the Court finds numerous examples of cases in which Kimmel &

Silverman's requested FDCPA fees have been substantially reduced.  Plaintiff's attorneys submit

an Order by Judge Cynthia M. Rufe of the Eastern District of Pennsylvania as evidence that there

do exist situations wherein courts have granted Kimmel & Silverman the hourly rates they seek.

Pl. Br. Fee Award, Ex. G (<u>Rivera v. NCO Financial Systems, Inc.</u>, 2011 U.S. Dist. LEXIS 82419

(May 2, 2011).  However, even in that case, the court reduced Kimmel & Silverman's award by

$1,372.50.  <u>Id.</u>

  The total award of fees and costs in <u>Rivera</u> was $4,993.50.  <u>Id.</u>  In <u>Weed-Schertzer</u>, the

total awarded was $5,092.50.  In <u>Brass v. NCO Financial Systems</u>, another FDCPA case litigated

by Kimmel & Silverman, the firm was awarded $2,457.20.  2011 U.S. Dist. Lexis 98223 (E.D.

Pa. July 22, 2011).  In this case, Plaintiff seeks an award of $9,211.50.

  As elucidated in sections II.B.4 and II.B.5, <u>infra</u>, Plaintiff makes no argument as to why

the instant case should be considered more time-consuming or difficult than any of the cases

cited above.  The Court therefore finds that Plaintiff's request for $9,211.50 in fees and costs is

well out of the range of fee awards in the comparable cases cited above.

  4. <u>Time and Labor Required</u>

  Plaintiff's attorney alleges that it has expended a total of 29.8 hours of attorney and

paralegal time on this case.  The Court finds this to be an unreasonable number of hours,

particularly considering the number of like cases litigated by Kimmel & Silverman, and the

similarity between the briefs filed on behalf of Plaintiff in this case, and those submitted in other cases.

Plaintiff's attorneys argue that "[t]here is no 'assembly line' approach to handling FDCPA cases, and that "[p]leadings generated by Kimmel & Silverman, P.C. are not 'cookie cutter' but are specific to each case."  Pl. Br. Fee Award at 12, 14.  Although, as explained above, the Court does not doubt that each FDCPA case presents a different factual scenario that must be processed and considered on its own merits, Kimmel & Silverman's submissions to the Court rebut its own insistence on the uniqueness of the pleadings filed in this and other courts. For example, of the thirty-three (33) paragraphs of the Complaint filed on Plaintiff's behalf, ten (10) of them can be found verbatim in the Plaintiff's Complaint in Weed-Schertzer.  Compare Pl. Compl. with Weed-Schertzer, 10-6402, Doc. No. 1.  Here we echo the sentiments expressed in Weed-Schertzer: "The Court understands the practicality of form based practice and the use of templates in order to economically prosecute a case.  However, should not those economies be passed on to the fee payer?"  Id. at *10.  Plaintiff herself explains that "Mr. Kimmel and Ms. Bennecoff's years of experience permit them to review facts initially provided by the client and quickly ascertain what additional documents or information are necessary to form a claim under the FDCPA."  Pl. Br. Fee Award at 14-15.  Accordingly, Defendant argues that Plaintiff's attorneys have claimed fees for time entries that are non-compensable, duplicative, or excessive. Defendant also contends that Plaintiff inappropriately claims fees for work performed after the entry of judgment in this case.  The Court addresses each of these arguments in turn.

(a) Non-compensable time

Defendant argues that Plaintiff has charged for services that are appropriately characterized as administrative, rather than legal.  "As a general rule, time that would not be

billed to a client cannot be imposed on an adversary. . . . Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." Alexander v. NCO Fin. Sys., 2011 U.S. Dist. LEXIS 64211 at *19 (E.D. Pa. June 16, 2011) (citing Public Interest Group v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995). In Alexander,[5] the court found that certain tasks, such as "opening a file in a database, mailing letters, and copying documents to a CD," were administrative and therefore should not be considered in Plaintiff's fee award. Id. at *20. Here, the Court finds that the following billed hours are administrative: Jason Ryan—Open file in database (.2 hours) (3/24/2010); Christy Sunchych—Send [letter] to Defendant (.1 hours) (8/27/2010); Christy Sunchych—Saved Defendant's responses to Discovery and updated AMICUS (.1 hours) (3/15/2011); Sarah Young—Mailed out disc responses (.2 hours) (3/31/2011); Christy Sunchych—Mailed [Order of Judgment] to Defendant's counsel (.1 hours) (5/12/2011). This time will be subtracted from the time submitted by Plaintiff.

 (b) Duplicative entries

  Several of Plaintiff's entries are also duplicative, and therefore ineligible for compensation. On 1/13/2011, Amy L. Bennecoff reports receipt and review of an email from ECF "re: scheduling order" (.1 hours). On that same day, she reports "Email from ECF re: minute entry for initial scheduling conference" (.1 hours). On 1/18/2011, she reports receipt of correspondence "with dates from conference" (.1 hours), and it is clear that the conference she refers to is the same scheduling conference referred to in the two 1/13 entries. Because these

---

[5] The Court notes that the Plaintiff in Alexander was also represented by Kimmel & Silverman. It is therefore distressing that the firm continues to bill this time, even though it has clearly been put on notice that these fees are not legally permissible. Kimmel & Silverman is hereby advised not to persist in claiming these fees, as the judicial resources that are expended in the line-by-line analysis of such attorneys' fees—namely, the courts' time and patience—are scarce.

three entries refer to Ms. Bennecoff's review of the same scheduling conference, two of them (.2 hours) will be subtracted from her total time.

On 1/27/2011, Ms. Bennecoff reports "Revise discovery requests; Send to SY to send to OPC" (.4 hours). Sending a discovery request to another attorney within the same office (SY, or Sarah Young), intending that that attorney will send the request elsewhere, is duplicative. As a result, .1 hours will be subtracted.

On 5/11/2011, Ms. Bennecoff records leaving two messages for Plaintiff (.1 hours)—one with her husband, and one on her voice mail. Later that day, Ms. Bennecoff records .3 hours spent actually speaking with the client over the phone. The .1 hours allegedly expended on voice mail messages will be subtracted.

Finally, the Court observes that, of the over one hundred entries recorded in this case, the vast majority are for expenditures of .1 or .2 hours, and many of them concern receipt and review of inter-office correspondence. In Weed-Schertzer, the court hesitates to categorize this time as duplicative. This Court shares that hesitation, but, like the Weed-Schertzer Court, "suspects that the case was overstaffed and has concern about the amount of time expended . . . ." Weed-Schertzer, 2011 U.S. Dist. LEXIS 108928 at *23. At this time, the Court chooses only to advise Plaintiff's attorney that enlisting more associates' work on a case in order to dribble the ball more efficaciously down the field is acceptable only when the end goal the firm shoots for is the vindication of Plaintiff's rights under the FDCPA—not the maximization of its own fee award.

(c) Excessive entries

The Court also finds that several of Plaintiff's entries are excessive. On 4/6/2010, paralegal Christy L. Sunchych reports "Conduct research for Associate" (.1 hours). At no point

does it appear that any associate requested or reviewed this research, nor is there any explanation of what the research entailed.  This entry will accordingly be struck.

On 10/8/2010, attorney Craig Thor Kimmel emailed Tara Patterson, another attorney, indicating that "name of Defendant needs to be corrected" (.1 hours).  On that same day, Tara Patterson reports reviewing Mr. Kimmel's email (.1 hours).  The Court finds it improper for either attorney—let alone both—to charge for correspondence expended because the attorneys included the incorrect Defendant's name in a draft of a complaint.  Both of these entries will be subtracted.

(d) Time spent on attorneys' fee petition

Plaintiff's attorney has recorded 3.3 hours of time spent preparing the motion for fees and the relevant memorandum and certifications.  Defendant argues that, pursuant to the Offer of Judgment agreed to by Plaintiff, Plaintiff "had an unambiguous obligation to enter into good faith negotiations to attempt to reach an agreement as to costs and attorney's fees."  Def. Br. Fee Award at 4.  The Offer of Judgment accepted by Plaintiff provides for "reasonable attorney fees as agreed to by the parties, or if no agreement be reached, as determined by the Court on motion."  Doc. No. 11-1.  The Court does not find that this provision necessarily obligates Plaintiff to initiate negotiation of attorneys' fees.

However, the Court finds that Plaintiff's claimed attorneys' fees are excessive.  Specifically, the Court finds that, with the exception of the two pages of procedural history included in the brief, the 32-page memorandum of law submitted in support of Plaintiff's petition for fees is identical to that submitted in Weed-Schertzer.  Compare Doc. 12-2 with Weed-Schertzer, 10-cv-6402, Doc. 14-1.  Moreover, the Weed-Schertzer Court noted that the fee submission it received from Kimmel & Silverman was a "nearly verbatim reprint[]" of the brief

submitted in five Pennsylvania cases.  <u>Weed-Schertzer</u>, 2011 U.S. Dist. LEXIS 108928 at *9 n.2 ("Literally, the opening memorandum of law in this case is supported by a 34 page brief, more than 31 pages of which are reprinted, copy-and-paste style, from the briefs filed in the previous cases in Pennsylvania.").  Accordingly, the Court will subtract the .3 hours allocated to "Prepar[ing] motion for fees," though it will not eliminate the .8 hours logged for revision to the memorandum of law.

Furthermore, Plaintiff's attorney logs a total of 1.7 hours for preparation of the certifications of the four attorneys staffed on this case, emailing Mr. Bontrager for his certification and the preparation of Mr. Bontrager's certification, and the preparation of exhibits. The Court will subtract this time from the fees requested by Kimmel & Silverman because the exhibits and certifications presented here are identical to those submitted in other FDCPA cases. As though intending to illustrate this point, the Consumer Law Attorney Fee Survey filed by Plaintiff bears the filing stamp not only of this action (Case 1:10-cv-04229-RBK-KMW, Document 12-8, Filed 5/25/11, etc.), but another action as well (Case 3:09-cv-00766-JAH-NLS, Document 16-5, Filed 12/22/09, etc.).  Moreover, as indicated above, Nicholas Bontrager's affidavit is identical to the affidavit submitted by him in other cases.  It is clear that Plaintiff's attorney has cranked out its fee petition in a mechanical fashion.  The Court does not fault a firm experienced in FDCPA litigation for reusing its materials in litigation.  However, the Court requires that the Plaintiff's fee reflect this mechanical practice.

5. <u>Novelty and Difficulty of the Questions</u>

As the analysis above indicates, there do not appear to have been novel questions of law raised in this FDCPA litigation.  Moreover, Plaintiff's attorney makes no such claim as to the novelty of issues encountered in this matter; instead, Kimmel & Silverman insist that their vast

experience in FDCPA litigation allows them to process the relevant legal issues expediently. Furthermore, the Plaintiff's attorney does not allege, nor does the Court recognize, any particular difficulty attached to the legal issues or the facts presented by this case.  Therefore, the Court finds it appropriate to assign hourly rates closer to the low end of the relevant CLS range.

## III.    LODESTAR CALCULATION

Based on the above analysis, the Court finds that the following hourly rates (those proposed by Defendant), and the following number of hours (as claimed by Plaintiff and adjusted in section II.B.4 <u>supra</u>) are reasonable:

| Legal Professional | Hourly Rate | Hours Worked | Total Fee |
|---|---|---|---|
| Craig Thor Kimmel, Esq. | $310 | 3.7 | $1,147.00 |
| Amy L. Bennecoff, Esq. | $210 | 11.3 | $2,373.00 |
| Sarah Young, Esq. | $200 | 7.5 | $1,500.00 |
| Tara Patterson, Esq. | $210 | .4 | $84.00 |
| Christy L. Sunchych | $110 | 1.8 | $198.00 |
| Jason Ryan | $110 | 1.2 | $132.00 |
| Chloe O'Connell | $110 | .1 | $11.00 |

These fees total $5,445.00.  Together with the $350.00 court filing fee incurred by Plaintiff in the initiation of this action, the total sum of fees and costs to be awarded to Plaintiff is $5,795.00.

## IV.    CONCLUSION

For the reasons expressed above, Plaintiff's motion for an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's requested attorneys' fees and costs are reduced to $5,795.00.  An appropriate Order shall issue today.


Date: 10/27/2011                                      /s/ Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge